**Electronically Filed
Intermediate Court of Appeals
29602
31-JAN-2011
09:51 AM**

NO. 29602

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


EDGARDO L. TACANG, Petitioner-Appellant,
v.
STATE OF HAWAI'I, Respondent-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(S.P.P. NO. 08-1-0005(3))


SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Fujise, and Leonard, JJ.)


Petitioner-Appellant Edgardo L. Tacang (Tacang) appeals from the "Order Denying, Without Evidentiary Hearing, Petition to Vacate, Set Aside, or Correct Judgment or Release Petitioner From Custody," (Order Denying Petition) filed on December 18, 2008, in the Circuit Court of the Second Circuit (Circuit Court).[1]

In the underlying criminal case (Cr. No. 03-1-0034(3)), Tacang was found guilty on February 18, 2004, after a jury trial of: (1) Promoting a Dangerous Drug in the Second Degree, in violation of Hawaii Revised Statutes (HRS) § 712-1242(1)(b)(i) (1993 & Supp. 2002) (Count 1); (2) Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329-43.5(a) (1993) (Count 2); (3) Promoting a Dangerous Drug in the Third Degree, in

---

[1] The Honorable Joseph E. Cardoza presided.

violation of HRS § 712-1243(1) (1993 & Supp. 2002) (Count 3);
(4) Prohibited Acts Related to Drug Paraphernalia, in violation
of HRS § 329-43.5(a) (Count 4); and (5) Attempted Promoting a
Dangerous Drug in the First Degree, in violation of HRS §§ 705-
500 (1993) and 712-1241(1)(b)(ii)(A) (Supp. 2002) (Count 5). The
circuit court ruled that Counts 1 and 2 merged into Count 5 and
therefore did not impose sentences on Counts 1 and 2. The
circuit court sentenced Tacang to twenty years of imprisonment on
Count 5, with an mandatory minimum term of three years, and five
years of imprisonment on Counts 3 and 4, with a mandatory minimum
term of two and one-half years on Count 3, all terms to run
concurrently. Tacang did not file a direct appeal.

On March 24, 2008, Tacang filed a Petition for Post-
Conviction Relief, pursuant to Hawai'i Rules of Penal Procedure
(HRPP) Rule 40, and a Supplemental Petition on July 21, 2008
(collectively, "Petition"). Tacang argued, among other things
that there was insufficient evidence to support his conviction
for Attempted Promoting a Dangerous Drug in the First Degree as
charged in Count 5. The circuit court rejected Tacang's claim
that there was insufficient evidence to support his conviction on
Count 5 as well as the other claims Tacang raised in his
Petition.

I.

On appeal, Tacang states the following points of error:

1. There's no evidence to support the conviction of
Promoting a Dangerous Drug in the Second Degree in violation
of Hawaii Revised Statutes ["HRS"] Section 712-1242.

2. There was no evidence to support the conviction of
Promoting a Dangerous Drug in the Third Degree in violation
of HRS § 712-1243.

3. There is insufficient evidence to support the
conviction of Attempted Promoting a Dangerous Drug in the
First Degree in violation of HRS § 712-1241.

4. There was ineffective assistance of counsel for
failing to argue the points of errors presented to the trier
of fact at trial.

2

5. Judy Wood, chemist for the Maui Police Department ["MPD"] failed to present sufficient proof that the substance(s) was indeed Methamphetamine and not merely contained traces of said substance(s).

6. Judy Wood failed to lay foundation, that the actual instrument(s) used to weigh and test the alleged substance(s) were in good working order and could be relied upon for the accuracy of these test(s).

7. Judy Wood testified that she calibrated the equipment in question, which would create doubt, that the equipment was accurate and be relied upon in order to convict appellant herein.

8. The alleged evidence had been received by the MPD on January 13, 2003, but was not tested by Judy Wood until one year later. The question presents itself, had the evidence been tampered with?

9. Maui Police Officer Wade Maeda, testified that the money found on appellant at the time of his arrest, had been tested for traces of drugs, but none had been found.

10. The five plastic packets tested by officer Madeda [sic], contained mere traces of an alleged substance (methamphetamine).

11. The names and amounts of monies found on the note books, were not the names of drug dealers, as the State argues, but were mere persons that worked with appellant on some repair jobs.

12. According to Officer Maeda, there was an undiclosed [sic] Confidential Informant ["C.I"], who was never identified at trial, nor was his or her name disclosed to appellant so appellant had the opportunity to defend himself against the false accusations brought against him.

13. There were two different weights presented into evidence regarding to [sic] the alleged substance(s) which led to the conviction herein.

1. The Evidence Report indicates, that there were a total of 5.80 grams of methamphetamine present when testing the weight of these five packets.

2. At trial, Office Maeda testified, that the total weight of the alleged substance(s) was 4.72 grams.

14. Officer Maeda testified that he "Field Tested" the weight and substance contained within these five packets. The weight and measurement of any substance as to weight and contents, is the job of the Maui Crime Lab, and not the field officer.

15. The scales found during the search of appellant's residence, were used to measure feed for his chickens, and not illegal drugs as stated by the prosecution.

16. The State illegally raised the alleged offense of Promotion of a Dangerous Drug in the Second Degree, to Attempted Promotion in the First Degree.

17[.] The money confiscated from appellant, namely $ 6,055[.]00 had no traces of drugs or any illegal material, and was not part of any illegal drug activity. These funds were for the purchase of building materials for the various jobs appellant was involved in.

(Some brackets in original.)

## II.

With respect to point of error 3, we conclude that there was insufficient evidence to support Tacang's conviction for Attempted Promoting a Dangerous Drug in the First Degree as charged in Count 5. In support of his argument on this point of error, Tacang cites State v. Ugalino, 107 Hawai'i 144, 111 P.3d 39 (App. 2005), a case decided more than eleven months after Tacang's Judgment in his criminal case was entered. In Ugalino, this court, based on evidence very similar to that presented in Tacang's criminal case, held that there was insufficient evidence to support Ugalino's conviction for Attempted Promoting a Dangerous Drug in the First Degree. Our analysis in Ugalino was in pertinent part as follows:

Ugalino was convicted of both 1) possessing at least one-eighth ounce of methamphetamine in violation of HRS § 712-1242(1)(b)(i) (1993) (Count 1) and 2) attempting to distribute at least one-eighth ounce of methamphetamine in violation of HRS §§ 705-500 and 712-1241(1)(b)(ii)(A) (1993) (Count 3). Both convictions were based on the 17.44 grams of methamphetamine recovered from Ugalino's pocket. On appeal, Ugalino argues that his conviction on Count 3 should be vacated or reversed on a number of grounds. Because we conclude that Ugalino's claim that there was insufficient evidence to support the conviction on Count 3 is dispositive, we do not address his other claims.

. . . .

In order to prove the attempted distribution of methamphetamine charged in Count 3, the State was required to show that Ugalino engaged in conduct constituting "a substantial step in the course of conduct intended to culminate" in the distribution of *at least one-eighth ounce* of methamphetamine. HRS §§ 705-500 and 712-1241(1)(b)(ii)(A). "Conduct shall not be considered a substantial step . . . unless it is strongly corroborative of the defendant's criminal intent." HRS § 705-500(3). We conclude that there was insufficient evidence that Ugalino took a substantial step toward the distribution of at least one-eighth ounce (3.54 grams) of the 17.44 grams of

4

methamphetamine in his possession. We therefore reverse his conviction on Count 3.

There was no evidence that Ugalino had engaged in negotiations, offered, or agreed to distribute any of the 17.44 grams of methamphetamine found in his possession. Indeed, there was no direct evidence of what Ugalino intended to do with the 17.44 grams. The State, however, argues that Ugalino's attempt to distribute at least one-eighth ounce could reasonably be inferred from the 17.44 grams of methamphetamine and eight empty ziplock packets Ugalino possessed and the other trial evidence. Based on the particular evidence adduced at Ugalino's trial, we disagree.

To establish the charged attempted distribution, the State was required to prove that Ugalino intended to distribute at least one-eighth ounce of the 17.44 grams. The evidence showed that Ugalino was a methamphetamine user. Officer Wingad testified that the butane lighter recovered from Ugalino's pocket was the "lighter of choice" for methamphetamine users and the glass pipe found in Ugalino's garage was a device used to smoke methamphetamine. Officer Wingad also testified that he strongly suspected Ugalino was on drugs because of Ugalino's aggressive demeanor and the "overwhelming" strength Ugalino displayed despite his small size. During his closing argument, the Deputy Prosecuting Attorney conceded that Ugalino was "probably" a drug user.

The State introduced circumstantial evidence that Ugalino may also have been a methamphetamine dealer. It failed, however, to introduce evidence providing the jury with a rational basis for evaluating how much of the 17.44 grams Ugalino would distribute versus how much he would keep for personal use. The State did not introduce evidence of how much methamphetamine Ugalino had sold or consumed in the past. Nor was there any expert testimony about the amount of methamphetamine a typical user would consume, the quantity of methamphetamine a typical user would hold for consumption, or the street value of methamphetamine. The only evidence on the portion of the 17.44 grams Ugalino intended to distribute was Sergeant Gannon's expert testimony that each of the eight empty ziplock packets found in Ugalino's pocket would commonly be used to hold between .1 and .2 grams of methamphetamine, but could hold up to .5 grams of methamphetamine. At best, Sergeant Gannon's testimony permitted the jury reasonably to infer that Ugalino intended to distribute a total of between .8 and 1.6 grams of the 17.44 grams of methamphetamine. This is less than the one-eighth ounce threshold necessary to prove Ugalino's attempted distribution charge.

Id. at 52-54, 111 P.3d at 157-59.

As in Ugalino, the evidence in Tacang's criminal case, which included a glass pipe with methamphetamine residue found in Tacang's room, showed that Tacang was a methamphetamine user. The prosecutor in closing argument acknowledged that Tacang "perhaps" was a drug user. While there was substantial

circumstantial evidence that Tacang may also have been a methamphetamine dealer, there was insufficient evidence to show that Tacang attempted to distribute at least one-eighth ounce (3.54 grams) of the total 5.75 grams of methamphetamine recovered from his room. We reverse Tacang's conviction on Count 5.[2]

III.

In light of our reversal of Tacang's conviction on Count 5, we decline to address Tacang's points of error to the extent that they are related to Count 5. To the extent that Tacang's points of error relate to his other convictions and sentences, we conclude that they are without merit.

We reverse Tacang's conviction on Count 5, and we vacate the portion of the circuit court's December 18, 2008, Order Denying Petition that concluded that there was sufficient evidence to support the conviction on Count 5 and denied Tacang's Petition with respect to Count 5. We affirm the Order Denying Petition in all other respects. The circuit court merged Counts 1 and 2 into Count 5 and did not impose a sentence on Counts 1 and 2. In light of our reversal of Count 5, we remand the case for sentencing on Counts 1 and 2 and for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawai'i, January 31, 2011.

On the briefs:

Edgardo L. Tacang
Petitioner-Appellant
Pro Se

Kim E. Whitworth
Deputy Prosecuting Attorney
County of Maui
Respondent-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

---

[2] With respect to Count 5, we do not consider whether we should remand the case for entry of judgment on the offense of Attempted Promoting a Dangerous Drug in the Second Degree as a lesser included offense. Tacang has already been found guilty of Promoting a Dangerous Drug in the Second Degree as charged in Count 1. As requested by the prosecution, the circuit court merged Count 1 with Count 5 and has not imposed a sentence on Count 1.